IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANDRE D. FLAGG,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    CASE NO. 1:17-CV-859-WHA-CSC
                                   )              (WO)
                                   )
K. MOORE, *et al.*,                )
                                   )
            Defendants.            )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on

December 20, 2017, by Andre D. Flagg, a pretrial detainee at the Houston County Jail.

In the complaint, the plaintiff alleges that on August 5, 2017, he was subjected to

excessive force by defendants, and he also challenges the conditions of his confinement

on this date, namely that he was deprived of his whites, his mat and blanket and was

forced to use the bathroom "with handcuffs and shackles." (Doc. 1 at p. 3). The named

defendants are Houston County Jail Corrections Deputies Kelita Moore, James Watson,

Walter Marshall, Tony Murphy, Aubrey Womack, Mitchell Thornton, Heather Rash and

Camille Glanton. (Doc. 1 at p. 1). The plaintiff sues these defendants in their individual

and official capacities and requests that "party's {sic} involved to be terminated from

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in
the docketing process.

correctional facility." (Doc. 1 at p. 4).   On June 25, 2018, the Court allowed the plaintiff to file an amendment to his complaint seeking monetary damages from the defendants. (Doc. 37 at p. 2).

The defendants filed a special report (Doc. 22, Exs. 1-11), which included relevant evidentiary materials in support of this report, specifically affidavits and prison documents, addressing the claims presented by Flagg.   They also filed a supplemental special report which included documentation of the plaintiff's grievances.   (Doc. 28, Ex. 1).   In these documents, the defendants deny they subjected the plaintiff to unconstitutional conditions and deny that they used excessive force against him. Furthermore, the defendants raise the defense of exhaustion in their special report.   (Doc. 22 at pp. 6-8).   Indeed, the Prison Litigation Reform Act ("PLRA") requires that "inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit."   *Jones v. Bock,* 549 U.S. 199, 202 (2007).   Thus, the defendants argue that because the Houston County Jail utilizes a grievance procedure and the plaintiff failed to file an appeal regarding any grievance underlying the allegations of his complaint, he has failed to exhaust his administrative remedies and his claims are barred.   (Doc. 22 at p. 8).

After reviewing the special reports and exhibits, the court issued an order on May 1, 2018, requiring Flagg to file a response to the defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 29).   This order specifically cautioned that "**unless within fifteen (15) days from**

2

**the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 29 at p. 4). Flagg filed a response to this order. (Doc. 38, Exs. 1-5). Pursuant to the directives of the order entered on May 1, 2018, the court now treats the defendants' special report as a motion to dismiss with respect to the failure to exhaust claims and as a motion for summary judgment as to any remaining claims and concludes that judgment is due to be granted in favor of the defendants.

## II. STANDARD OF REVIEW

Based on the foregoing, the court deems it appropriate to treat the special report filed by the defendants as a motion to dismiss with respect to the exhaustion defense. Thus, this case is now pending on the defendants' motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion [defense]. . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed Defendant's

"motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]'").

However, to the extent that the court concludes that the plaintiff has properly exhausted his administrative remedies as to any claim, the court will address the merits of those claims on summary judgment. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate

evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet the evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless

a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes

involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and

merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Flagg's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and extensive review of all the evidence in this matter.  (Doc. 22 Ex. 1-11, Doc. 28 Ex. 1, Doc. 38 Ex. 1-5).  After such review, the court finds that Flagg has failed to exhaust his administrative remedies on each of his claims relating to the incident on August 5, 2017 and that this action could be dismissed solely on the basis of exhaustion.  Indeed, Flagg never filed any grievance as a result of the August 5, 2017 incident concerning his allegations of excessive force or deprivation of constitutional conditions. (Doc. 38 Exs. 1-3).  Importantly, the court has previously concluded that Flagg failed to exhaust his administrative remedies on all his conditions claims for the period of March 21, 2016 through August 30, 2017 for lack of access to sufficient toilet facilities and access to his mat and blanket and dismissed those claims on that basis.  *See,* Recommendation of the Magistrate Judge, *Flagg v. Reed,* 1:17cv642,

RAH-SMD, August 4, 2020 (Doc. 116 at p. 29), *adopted* by J. Huffaker on September 18, 2020 (Docs. 123, 124).   Furthermore, with respect to the disciplinary proceedings resulting from the August 5, 2017 incident, the plaintiff received a hearing where he was found guilty and his appeal was denied because it was received late.  (Doc. 25-1 at pp. 5, 11 and 16).   As an alternative basis of dismissal, however, the court further finds that Flagg has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants on his Eighth Amendment claim for excessive force.

### III.  STATEMENT OF FACTS

In his complaint, the plaintiff alleges that on August 5, 2017, he was "unlawfully tasered by officer Sgt. Watson behind the back for not hand cuffing so they could physically take my legal law work from my person."  (Doc. 1 at p. 3).  He further alleges that he "was physically beaten with and without hand cuffs and strip {sic} of all whites and mat/blanket."   *Id.*  He also alleges that on August 5, 2017 and after, he was "force {sic} to use bathroom with hand cuffs and shackles."   *Id.*  The plaintiff sues the defendants in their individual and official capacities and asks that "party's {sic} involved be terminated from correctional facilities".  (Doc. 1 at p. 4).    Later he filed an amendment to the complaint seeking monetary damages.  (Doc. 37 at p. 2).

James Brazier, who assumed the position of Jail Commander over the Houston County Jail on August 1, 2017, and prior to that served as the Assistant Jail Commander, filed an affidavit with the Court stating as follows:

4. During the incarceration at issue in this lawsuit Plaintiff was both a pretrial and a convicted inmate. Plaintiff was booked in the Houston County Jail on December 13, 2015 on charges of felony murder. Plaintiff was transferred into the custody of the Alabama Department of Corrections on October 10, 2017. Plaintiff was convicted and sentenced on September 20, 2017.

5. The Houston County Sheriff's Office operates the Houston County Jail according to a written set of policies and procedures which govern the conduct of persons employed at the jail.

6. All deputies at the Houston County jail are charged with the responsibility of reporting infractions by fellow deputies and reporting any problem to the senior deputy present immediately upon learning of the problem.

7. I have had no indication that my jail training, policies, procedures or supervision were likely to result in violations of an inmate's constitutional rights. There is no history of abuse by correctional officers or medical staff in the Houston County Jail.

8. The Houston County Jail has a grievance policy for inmates to express complaints. When an inmate has a grievance, the inmate may submit a grievance to jail staff. Inmates use a kiosk to submit grievances and any other types of communication to jail staff. If a kiosk is not functioning, inmates are provided with paper forms to communicate with jail staff. A grievance will be promptly investigated and answered by a member of jail staff. Most grievances are answered by the grievance deputy. Grievances of an emergency nature may be made orally and are handled immediately. No negative action will be taken against an inmate as a result of filing a grievance. If an inmate is dissatisfied with the response to the grievance, he or she may appeal in writing up the chain of command to the Sheriff.

9. A copy of the Houston County Jail Inmate Rulebook, which contains instructions for submitting a grievance and other jail rules, is issued to each inmate

as part of the booking process.  Inmates, including Plaintiff, are well aware of the grievance procedures in place in the Houston County Jail.

10.   I have never received an appeal from the Plaintiff regarding any grievance that he has filed regarding this interaction. To my knowledge, the Plaintiff did not submit an appeal to a grievance to any other member of jail staff regarding any allegations contained in this lawsuit.  Thus, Plaintiff has failed to follow the grievance procedures in place at Houston County Jail.

11.   Inmates at the Houston County Jail interact with jail staff multiple times a day.  Thus, Plaintiff had multiple opportunities to contact members of jail staff and file a grievance or to appeal a response that he received within jail rules.

12.  It is the policy of the Houston County Sheriff's Office that all inmates confined in the Houston County Jail be in compliance with all inmate rules. Inmates are aware of inmate rules through the Inmate Rulebook issued at booking. Inmate compliance with all jail rules and policies is vital for the safety, security and orderly operation of the jail.

13.  It is the Houston County Jail policy to remove an inmate from normal population to segregated or administrative housing when an inmate is threatening the security or orderly operation of the facility.  Inmates are housed in segregated or administrative housing both for their own protection and for the protection of other inmates and jail staff.  Corrections Deputies must establish and keep control of the inmates to operate a secure facility.

14.   On August 5, 2017, Plaintiff was being housed as an assault risk in administrative segregation due to his violent actions and assaults on jail staff.  On numerous occasions before this date Plaintiff had damaged jail property, refused to follow jail rules and instructions from jail deputies, and assaulted other inmates and jail deputies.

15.   I have reviewed all documentation from the interaction between Plaintiff and Corrections Deputies on August 5, 2017.  Defendants used no more force than necessary in defending themselves against Plaintiff's aggressive actions.  Defendants' actions were only taken in defense and were taken in response to Plaintiff's aggressive actions.   Plaintiff did not appear to be significantly injured and Plaintiff was not acting like he was injured after this incident.  Plaintiff was examined by medical staff following this incident and no significant injury was found.

16.   Plaintiff was housed in many different locations in the jail in an attempt to house Plaintiff in a location where he could not harm himself, harm others or harm jail property.  During the time period that Plaintiff was housed in a cell without an attached toilet, Corrections Deputies checked on Plaintiff approximately every two hours twenty-four hours a day and gave Plaintiff the opportunity to use the restroom every two hours twenty-four hours a day.  Thus, Plaintiff had the opportunity to use a toilet just outside his cell every two hours. At no time was Plaintiff denied access to a toilet or forced to use the bathroom inside of his cell.    However, on numerous occasions during Plaintiff's incarceration in a cell with access to a toilet and in a cell without access to a toilet, Plaintiff has chosen to urinate and defecate on cell floors, on cell walls and on jail property.  Plaintiff has thrown urine and feces on Corrections Deputies multiple times.

17.   Because of Plaintiff's housing status and an assault risk, handcuffs and leg shackles were not removed when Plaintiff used the toilet outside of his cell.  A Taser device was not pointed at Plaintiff each time his cell door was opened. Plaintiff was provided with a mat and a blanket each night as his housing status allowed.

18.   Jail records establish that Plaintiff suffered no unconstitutional treatment while confined in the Houston County Jail.

19.   I certify and state that the records from the Houston County Jail attached to the Special Report are true and correct copies of the inmate records maintained at the Houston County jail in the regular course of business.  I am the custodian of these records.

20.   I declare under penalty of perjury that the foregoing is true and correct. I further declare that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

(Doc. 22-5 at pp. 1-5).  The Houston County Jail Statement of Inmate Rules sets out the

Grievance Procedure as follows:

1.  If an inmate has a grievance, they may complete a grievance using the pod kiosk.  Grievances are by individual inmate only.  If more than one inmate has

the same grievance, each inmate must submit their own grievance. Inmates may only submit one grievance per day.

2. Complete the grievance providing as much detail as possible in the space provided for the inmate. Each grievance may only address one issue and the grievance cannot contain cuss words or any disparaging comments about any person. The grievance must be submitted within three days of the event that is the basis of the grievance. The inmate shall state in their grievance the details and the date of the event made the basis of the grievance. **Grievances that do not conform to policy are returned without the grievance issue being addressed.**

3. The Grievance Deputy has 15 days to investigate and answer the grievance.

4. **If the inmate is not satisfied with the response to the grievance, the inmate may appeal the decision using a grievance appeal form. An appeal form may be obtained by asking sheriff's office personnel for an appeal form. The completed grievance appeal form shall be placed in the secure box. The appeal must be submitted within 3 days from the date the inmate is notified of the initial decision. The sheriff's office member hearing the appeal will have 30 days to answer the appeal.**

5. **If an inmate is dissatisfied with the response to an appeal, they may repeat the appeal procedures as detailed in item 4 until they reach their third, and final appeal. The Jail has a three appeal process and the response to the third appeal is the final decision.**

6. If an inmate has an emergency, he or she may make an oral request to any member of the sheriff's staff. The sheriff staff member will immediately notify a supervisor who will investigate the emergency grievance. An emergency is anything that affects the immediate, life, safety, or health of the inmate or the security and safety of the facility.

7. All grievances are tracked to ensure that (1) inmate's grievances are answered; (2) inmates have followed the rules regarding filing grievances and appeals.

(Doc. 22-2 at p. 8). (Emphasis added).

14

Further, the Houston County Jail Statement of Inmate Rules sets out the

Sanction/Discipline Procedure as follows:

Inmates who commit rules violations will be sanctioned or disciplined based on the severity of violation and history of pervious {sic} violations. Any inmate who has more than nine previous sanctions will have all rule violations treated as discipline offenses.

Inmates who received a sanction will have certain privileges suspended for a pre-determined amount of time based upon the number of sanctions the inmate has received.

Anytime a staff member witnesses, or learns of, an inmate committing an offense warranting a sanction the staff member will complete a sanction form.

**The inmate will receive a copy of the sanction form as soon as practicable after the completion of the process. The inmate may appeal the sanction to the Jail Commander within 1 day after receiving their notice of sanction.**

**The Jail Commander, or his designee, will answer the inmate's appeal. There is no further administrative appeal of a sanction beyond the Jail Commander.**

Inmates who receive a discipline will have their privileges suspended and receive lockdown time based upon the type of offense the inmate committed.

Anytime a staff member witnesses, or learns of, an inmate committing an offense warranting a disciplinary the staff member will complete a disciplinary form.

**The inmate will receive a copy of the disciplinary notice as soon as practicable after the completion of the process. The disciplinary notice will advise the inmate of the procedures, process, and what they may do.**

**The inmate will receive notice of their disciplinary hearing at least twenty-four hours prior to the hearing. The inmate may waive their hearing by signing the Waiver of Hearing form.**

**After the disciplinary hearing and determination, the inmate may appeal the determination to the Jail Commander within 1 day after receiving their notice of the outcome of the discipline hearing. The Jail Commander, or his designee, will answer the inmate's appeal. There is no further administrative appeal of a discipline beyond the Jail Commander.**

(Doc. 22-2 at pp. 8-9). (Emphasis added).

Pursuant to an order of this court, the defendants also filed portions of prison records from the Houston County Jail from March 21, 2016 through August 30, 2017, documenting numerous kiosk filed complaints made by the plaintiff.   (Doc. 28, Ex. 1). In his response to the Defendants' Special Reports, the plaintiff also submitted many of the same copies of kiosk complaints as well as other grievances for the time period between March 1, 2016 and August 30, 2017.   (Doc. 38, Exs. 1-3).   None of the submitted grievances relate to the August 5, 2017 incident which resulted in the plaintiff's complaints of excessive force and unconstitutional conditions.   Indeed, the court has previously concluded that Flagg failed to exhaust his administrative remedies on all his conditions claims for the period of March 21, 2016 through August 30, 2017 for lack of access to sufficient toilet facilities and access to his mat and blanket and dismissed those claims on that basis.   *See,* Recommendation of the Magistrate Judge, *Flagg v. Reed,* 1:17cv642, RAH-SMD, August 4, 2020 (Doc. 116 at p. 29), *adopted* by J. Huffaker on September 18, 2020 (Docs. 123, 124).

Jail incident reports indicate that on August 5, 2017, the plaintiff refused Defendant deputies' requests to put his hands through the bean hole to be cuffed so he could be escorted to the restroom.   After continuing to refuse compliance and assuming a defensive stance, he was tased and fell to the floor and was cuffed.   (Doc. 22-1 at pp. 2-25).   The plaintiff received an Acknowledgment of Disciplinary Due Process informing him of his right to a hearing but refused to sign the form.   (Doc.  22-1 at p. 15).   A

hearing was held on August 17, 2017 and the plaintiff was found guilty. He was

sentenced to 45 days to be served in disciplinary separation. (Doc. 25-1 at pp. 5, 11).

He was sent appeal forms on August 18, 2017. *Id.* However, the plaintiff's attempt to

appeal was denied because it was received late. Indeed, the appeal was due on August

19, 2017, but was received on August 23, 2017. (Doc. 25-1 at p. 16).

## IV. DISCUSSION

### A. EXHAUSTION

The defendants raise the defense of exhaustion in this action. In addressing the

requirements of 42 U.S.C. § 1997e as to exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion
> a precondition to filing an action in federal court." *Higginbottom v.*
> *Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting
> *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means
> that "until such administrative remedies as are available are exhausted,"
> a prisoner is precluded from filing suit in federal court. *See id.*
> (affirming dismissal of prisoner's civil rights suit for failure to satisfy
> the mandatory exhaustion requirements of the PLRA); *Harris v.*
> *Garner*, 190 F.3d 1279, 1286 (11th      Cir. 1999) ("reaffirm[ing] that
> section 1997e(a) imposes a mandatory requirement on prisoners seeking
> judicial relief to exhaust their administrative remedies" before ***filing*** suit
> in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir.
> 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999)
> (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate
> incarcerated in a state prison . . . must first comply with the grievance
> procedures established by the state department of corrections before
> filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179
> F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of
> prisoner's civil suit for failure to satisfy the mandatory exhaustion
> requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328

> (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under §
> 1997e(a) for failure to exhaust administrative remedies prior to filing
> suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in

original).  Furthermore, the law is well-settled that "the question of exhaustion under the

PLRA [is] a threshold matter that [federal courts must] address before considering the

merits of the case.  Because exhaustion is mandated by the statute, [a federal court has]

no discretion to waive this requirement."  *Myles v. Miami-Dade County Correctional and*

*Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks

omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander*

*v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)).  The court will therefore "resolve

this issue first."  *Myles*, 476 F. App'x at 366.

When deciding whether a prisoner has exhausted his remedies, the court should

first consider the plaintiff's and the defendants' versions of the facts, and if they conflict,

take the plaintiff's version of the facts as true.  If in that light, the defendant is entitled to

have the complaint dismissed for failure to exhaust administrative remedies, it must be

dismissed.  If the complaint is not subject to dismissal at this step, then the court should

make specific findings in order to resolve the disputed factual issues related to

exhaustion." *Myles*, 476 F. App'x at 366 (internal quotation marks omitted) (citing

*Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008).  Consequently, a district court

"may resolve disputed factual issues where necessary to the disposition of a motion to

dismiss for failure to exhaust [without a hearing].  The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (internal citations omitted).  Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or other factfinder]."  *Id*.

Upon review of the complaint, the defendants' special reports and the undisputed evidentiary materials filed in support thereof and the plaintiff's response to the special report and documents filed therewith, the court concludes that the defendants' motion to dismiss is due to be granted for the plaintiff's failure to exhaust his Eighth Amendment claims of excessive force and alleged deprivations of access to sufficient toilet facilities, and his mat and blanket.  Indeed, the Houston County Jail's grievance policy states that an inmate may file a grievance via the kiosk system and if unsatisfied with the response may appeal to the sheriff's office personnel by obtaining an appeal form from the sheriff's office and completing it and returning it to a secure box within a specified time. If an inmate is unsatisfied with the response, this process maybe repeated a second time. (Doc. 25-2 at p. 8).  The policy specifically states that "[t]he Jail has a three appeal process and the response to the third appeal is the final decision".  *Id.*  Furthermore, the Houston County Jail's Sanction/Discipline Procedure states that "[a]fter the disciplinary hearing and determination, the inmate may appeal the determination to the Jail

Commander within 1 day after receiving their notice of the outcome of the discipline hearing.  (Doc. 22-2 at p. 9).

In response to the defendants' special reports, the plaintiff filed numerous documents concerning his efforts to appeal grievance decisions.  (Doc. 38 Exs. 1, 2 and 3). After careful review of these documents, the court concludes that the plaintiff failed to pursue the three-appeal grievance process for all his claims with the exception of a claim pertaining to access to his legal work, which has not been raised in this action and has been previously dismissed in *Flagg v. Reid,* 1:17cv 642 M.D. Ala, September 18, 2020, J. Huffaker.  Indeed, with the respect to the August 5, 2017 incident, plaintiff failed to even file and initial grievance.  (Docs. 22, Ex. 1 and 38, Exs. 1, 2, and 3).  Additionally, the undisputed evidence demonstrates that the plaintiff received a disciplinary hearing for the August 5, 2017 incident where he was found guilty and failed to timely file an appeal of that decision.  (Doc. 22-1 at p. 5, 11 and 16; Doc. 22-2 at p. 9).  Thus, the court concludes that the plaintiff failed to exhaust his grievance and disciplinary appellate remedies for the August 5, 2017 incident.  Accordingly, the court concludes that the plaintiff's failures to file any grievance or to timely appeal the adverse disciplinary decision arising from the August 5, 2017 incident mandates dismissal of his Eighth Amendment claims concerning his alleged deprivations of access to sufficient toilet facilities and access to his mat and blanket and his claim for excessive force.  *Leal,* 254 F.3d at 1279.

The court is mindful that the plaintiff claims the defendants thwarted his efforts to exhaust his grievance processes.  Specifically, he claims that he was given frivolous responses to his grievances and appeals.  (Doc. 38 at p. 12).  However, he fails to produce any evidence to support this claim.   Indeed, there is no evidence before the court that defendants prevented him from appealing from the sanction he received resulting from the disciplinary hearing held on August 17, 2017 which was based on the August 5, 2017 incident.  (Doc. 38 Ex. 1-3).  Furthermore, there is no evidence before the court that the defendants prevented the plaintiff from filing any grievance relating to the August 5, 2017 incident.  *Id.*  The grievance and appeals documents before the court demonstrate that the jail had a grievance process and a sanction-appeal process, both of which were accessible to the plaintiff and that the plaintiff wholly failed to utilize grievance processes with respect to the August 5, 2017 incident and he failed to follow the rules for timely appealing the August 17, 2017 disciplinary ruling.  The Court could dismiss this action solely on the basis of plaintiff's failure to exhaust; however, out of an abundance of caution and as an alternative basis for dismissal, the court hereafter will address the merits of the plaintiff's excessive force claim.

## C.  EXCESSIVE FORCE

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's

prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim

merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified the five factors relevant in

determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security."   *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security.").  In addition, the determination "must not be made in the glow of hindsight."   *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted).  "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533.  Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order.  Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that Plaintiff does not dispute the fact that he refused repeated

24

orders to put his hands through the bean holes and to lay on the bench in his cell, and he continued to resist while being restrained.  (Doc. 22-1 at pp. 2-6).  Rather, he claims in his Complaint, without providing specific details, that he "was unlawfully tasered by Officer Sgt. Watson behind the back for not handcuffing" and that he "was physically beaten with and without hand cuffs."  (Doc. 1 at p. 3).   Thus, the court concludes that the need for force arose from Flagg's failure to obey multiple orders from Defendant Officers.  *Pearson*, 665 F. App'x at 864.

With regard as to whether Plaintiff posed a threat and as to the reasonableness of the force used, it is undisputed that on August 5, 2017, Plaintiff was being "housed as an assault risk in administrative segregation due to his violent actions and assaults on jail staff.   On numerous occasions before this date, Plaintiff had damaged jail property, refused to follow jail rules and instructions from jail deputies and assaulted other inmates and jail deputies."  (Doc. 22- 5 at p. 3).  Further, Plaintiff does not dispute that on August 5, 2017, when officers were attempting to enter his cell,  he refused repeated orders to put his hands through the slot in his cell door to be handcuffed, which is a policy for assault risk inmates and likewise that he refused orders to lay on the bench in his cell. Furthermore, he does not dispute that he struggled with the officers refusing restraint. (Doc. 22-1 at pp. 2-9; Doc. 22-7 at p. 3).

In his response to the defendants' special report, Flagg states he "was tased in the right side of his back by Sgt. J. Watson for exercising his 6th and 14th amendment, he was,

then, kicked, punched and slammed and continusly {sic} tased over (10) times, while being assaulted in hand cuffs" by Defendant Correctional Officers. However, Officer Watson testified that after Plaintiff's repeated refusal to follow orders

> "Lt. Moore called for the cell door to be opened and I deployed my Taser device which struck Plaintiff in two places.  Plaintiff was able to break one wire before he could be handcuffed.  He struggled and pulled away from Deputies in resistance to being handcuffed so the Deputies were unable to handcuff him.  I then used my Taser device in drive-stun mode on Plaintiff's right rear thigh.  Plaintiff continued to physically resist being handcuffed and having the leg shackles placed; however, officers were able to get both secured."

(Doc. 22-7 at pp. 3-4; 22-1 at p. 7).  Nowhere does Plaintiff dispute his refusal to follow orders, or his refusal to submit to restraint, or that he broke a Taser wire while continuing to fight with Defendant Officers. Thus, the court concludes that the amount of force used by the correctional defendants was justified by the plaintiff's repeated non-compliance with orders and his continued physical resistance and the need to restore order. Accordingly, the court concludes that the first four *Whitley* factors weigh against the plaintiff's claim of excessive force.

With respect to the fifth *Whitley* factor concerning the lack of serious injury, the Court notes that the plaintiff claims "he receive[d] electrical burns on multiple places (including his genital area), as well as his ribs and lower back."  (Doc. 38 at p. 10). However, Officer Watson stated that "Plaintiff did not appear to be injured and Plaintiff was not acting like he was injured after this incident."  (Doc. 22-7 at p. 4).  Indeed, the medical records demonstrate that he was evaluated at the Houston County Jail Medical

Clinic on August 5, 2017 following the incident for complaints of rib pain.   The examining nurse reported that she "palpitated areas of concern during deep inspirations, but . . .  did not note movement /deviation /or crepitus deformity of ribs in areas inmate indicated."  (Doc. 22-1 at p. 21).  Plaintiff was again seen on the morning of August 7, 2017 where "mild tenderness" was noted in the back and chest but no "swelling" was noted.   Also, the Plaintiff refused Motrin for pain.  (Doc. 22-1 at p. 20).  There were no reports by the plaintiff of burns and no treatment for any burns is noted.  Thus, the court concludes that the plaintiff's injuries and the pain resulting from them were relatively minor.  Accordingly, the court concludes that summary judgment is due to be granted on plaintiff's excessive force claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions to dismiss and for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

**On or before February 8, 2021**, the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.   Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 25th day of January, 2021.


    /s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE